Case number 17-5149, Stuart A. McKeever, Appellate v. Jeff Sessions, Attorney General. Mr. Phillips for the amicus curiae, Mr. Hinchelwood for the apple leaf. Mr. Phillips for the amicus curiae, Mr. Hinchelwood for the apple leaf. Mr. Phillips for the amicus curiae, Mr. Hinchelwood for the apple leaf. Mr. Phillips for the amicus curiae, Mr. Hinchelwood for the apple leaf. Mr. Phillips for the amicus curiae, Mr. Hinchelwood for the apple leaf.  First, but just before we get to the merits, could I ask you about Article 3 standing? As I understand it, these records are currently controlled by the archives and you've sued the Attorney General. So your harm is traceable to, not the AG's refusal to disclose, but the archivist's. Why isn't that a traceability, redressability problem? I think the good Article 3 standing analysis is contained in Carlson, and we think that the logic of Carlson The defendant in Carlson was the United States. The United States assumes the archives. The Department of Justice does not. Right. I think the way to look at this case, Your Honor, is although the plaintiff's complaint did name the Attorney General as the defendant, I think the better way to understand it is that it is a petition to the court asking the court to release records. And I think there are many cases where that has been allowed and has not been considered an Article 3. Can the court direct an order to the archivist where the archivist isn't a party in the case? Well, I think this bears on the question of whether these are judicial records or not, and I think the answer is yes, they are. And so although they are sort of in the physical custody of the archives, so long as they are court records, then yes, the court can absolutely sort of direct that they be sort of given physically back to the court. So I think on that basis there's Article 3 standing here. I think to say that there's not Article 3 standing for this type of request would work a fairly significant change in the law. Well, only I think it might be narrow just insofar as Mr. McKeever sued the wrong party. Well, again, I think that the district court itself understood that, understood this as a request to it the court for the release of records. So I think an issue of sort of who is on the caption of the case should not control the question of Article 3. Your theory is 6E1 makes these records of the attorney for the government, which is DOJ, and maybe the court, and that's good enough. Well, I'm not sure I agree with sort of the first part about it. It makes them the records of the government, but the argument is that they're the records of the court. The attorney for the government will retain control unless the court orders otherwise. That's right. So by default the records are. The problem is the attorney for the government has not in fact retained control. Turned the documents over to a separate agency. Right. That's true. I don't think it impacts Article 3 standing here, though. I think, again, I think the best analysis of this is in Carlson, and we would sort of rely on that analysis. So there are three, setting that aside, there are three key reasons that we think should convince this Court that the courts, that the district court did have authority here to release these records. First, by its plain text, Rule 6E imposes its obligation of secrecy on a precisely enumerated list of people. And the district court is not on that list, and therefore Rule 6E's strictures do not bind the district court itself in the first place. Second, the Advisory Committee on Criminal Rules, which is responsible for proposing and considering amendments to Rule 6, has looked at precisely this issue and has concluded that the courts have properly invoked their inherent authority to make disclosures of this sort, and that there's no reason for this Court to second-guess that considered judgment. And third, every court to have considered the issue, which includes three courts of appeals, as well as district courts and two other circuits, has concluded that courts do have inherent authority to make certain disclosures of grand jury records that are not specifically addressed in Rule 6. Can I just ask you one just detailed question on that last point, which is the Eighth Circuit has this decision in McDougall? Yes. Isn't that a court that came out the other way? I don't think it is. And at the very least, it is not a court that actually sort of considered these particular issues. I don't think these arguments were clearly raised and addressed in that decision. So I don't think it is – I don't think it counts as a court that has squarely considered this and come out the other way. And I think on that point, it's notable that I don't believe the government cites McDougall as support for its position here or to contradict our view of the court. It did, but I think Judge Sykes' dissent in the Seventh Circuit did cite McDougall in support of her position, which is contrary to yours. And it just – I mean, obviously, it's not binding on us, but I just – I was struck by the point that all sides seem to agree that there's no conflict out there, not just, I guess, I read McDougall to entertain the argument whether Rule 6 – whether disclosure has to come under the auspices of Rule 6 or whether there's some other way to get disclosure, and it seemed like McDougall at least addressed that argument and concluded that you have to come within Rule 6. I don't think – I don't think it squarely did just based on the nature of the arguments that were made. I understand the point. The other thing is that I – in rereading McDougall, it's not clear to me that what was being requested was the actual underlying records of the grand jury as opposed to court records of ancillary proceedings to the grand jury. I think she was trying to get access to records relating to a contempt proceeding, perhaps. And that makes it even stranger than Rule 6 would have been doing the work. Well, I – I mean, Rule 6 does address records in ancillary proceedings. I see. Rule 65 and 66 are sort of geared toward that. And I think that conceivably can make a difference. And so I think the fact that that seems to be what McDougall was addressing. Can I take you then to your first argument, which is the textual argument? Absolutely. Okay, so on the text, here's my question. So E1 says an attorney for the government will retain control unless the court orders otherwise. So let's just assume the standard situation in which an attorney for the government is retaining control. I get that it says unless the court orders otherwise. And it seems like your argument is tethered to this notion that there's a distinction between the court and an attorney for the government because an attorney for the government is somebody outside the court and then there's the court itself. That's right. And I guess I wasn't sure about that because it seems like what's going to happen a lot of times is when a party comes before the court and says release these grand jury documents for any – you name the reason. It could be historical significance. It could be other things. What they're really saying is tell the government attorney, who by default assumption has the documents, to give me the documents. So at that point it seems like there's not a talismanic distinction between the court itself and the government attorney who by assumption of E1 is holding onto the documents. They're the same thing. That's not to say you necessarily can't get home. It's just that on your – at the end of the day, it's just that on your textual argument, I was wondering about that because it seems like the rule assumes and some of the cases assume that there's no distinction between the attorney for the government who's holding the documents for the court and the court. Well, I do think in practice that is the way it plays out in many cases because by default and especially when it's – especially when the grand jury either is still ongoing or has recently been ongoing, you know, especially when you're talking about proceedings that are directly connected to the underlying grand jury, then yes, the government will have them. And so it makes sense that sort of the request will practically be directed to them. So I think that is true as a practical matter, and it is true that therefore the rule acts as a constraint on what the government itself does. But there are instances where the records are, or at least some sorts of records are in the possession of the court itself. And I think in that situation, the text of the rule does not address that situation. And when – what's the practical situation in which that comes up? When is that – when would I predictably assume that there's a meaningful distinction between the court, the court and the government attorney who under E-1 is the presumptive custodian of the documents? Well, I think it is rare. I think the fact that it's rare is all the more reason to be comfortable with saying that in these sort of unusual circumstances that we've got with these types of requests, that we are not proposing some kind of evasion of the rule that will eviscerate it and make it meaningless. Sorry. Just one last follow-up. But I think what – I guess what I'm getting at is if it's true that in the mine run of situations, there's not a meaningful distinction between the court itself and the government attorney who's holding the documents subject to the court's override of that, then the exceptions, like the exceptions in E-3E, which are the ones that we're mainly focused on, those seem like they do operate against the court, not – they don't just operate against those people who are outside the court. They operate against the court. And then the question becomes, okay, then there's those exceptions. Are those exceptions the only exceptions, or can you still get around the rule by saying the court still has some residual authority to authorize a release? But it's a different argument than your threshold textual argument to say that the E-3E exceptions still hold when it's the court that has the documents, but you can't just get out of those exceptions by saying, no, no, those exceptions only have to do with circumstances in which somebody other than the court is holding it, so the rule just doesn't come into play at all. Do you understand what I'm saying? I think I do. But, you know, I think with respect to your previous question, it is the practical case that the government will tend to have the records, and so the text of the rule will apply directly. But I don't want to suggest that there's no legal difference between the court and the government, because I think there absolutely is. So I think, I think. I mean, it's sort of, in a way, it kind of, it dovetails a little bit with the standing questions that Cass was asking you, because if there is a distinction, then here the court itself doesn't have the documents. Well, the court doesn't physically have the documents, but, you know, I think the, they are court records, and so I think in other instances the court can say to the government, you know, sort of, I'd like the records, please. And we cite cases in our reply brief of instances where courts have said to the government, you know, I'd like to look at the grand jury records, please, even instances where district courts have done that sua sponte, because they think something has happened with the grand jury process, and so they say to the government, you know, sort of under their E-1 authority, give me the grand jury records, at which point the court is in possession of them. And at that point, it is, you know, our argument is that it is not, as a matter of the text of Rule 6e, it is not constrained by E-3e, because that is a situation in which it is not the government disclosing. I mean, I don't think, I think practically that sort of, that sort of thing rarely happens, if ever, and it's really only in a, more in a situation like this, where years after the fact, the court might retake possession of the records for various reasons and then can disclose them, not, and do so in a way that does not contradict Rule 6. If your theory depends on who has the records, that's not going to be a limiting principle at all, because on your reading of E-1, the court, if the government, if the records are in possession of the archivist or DOJ or anybody else, the court can just order the records transferred to the court. And then on your theory, you're completely out of the rule, and we're just into nine-factor balancing tests. So I don't, I don't think we are completely out of the rule, but in any case, we certainly are not into anything goes land, which I think is the way our argument has been portrayed and is not correct. We absolutely do not think. So let's, so let's just press on that, right? The background rule is secrecy. That's correct. And then you have this list, list of exceptions. Normal presumption is when Congress enumerates a list, the list is the list, and courts don't add to it. That presumption is fortified where the list is detailed, reticulated, which fairly describes this. We have at least a handful of Supreme Court cases like Bagot and Douglas Oil and Sells, which take the list seriously, and they say you have to narrowly construe the elements, like what is a pending case, and even when you're within an exception, courts have to exercise discretion narrowly. And under your theory, all of that just misses the boat, because the parties seeking the records in a case like Bagot could say, okay, I've lost under the enumerated exceptions, but now I have my alternative theory under a nine-factor balancing test or some other test. Right. So, no, we don't think that in the case of Bagot, the IRS could have just asked the district court, hey, district court, you could just say, hey, it's really important. Tax enforcement is really important, and the balancing test says you should look to the purpose of the disclosure, and the IRS thinks that's important. Right. Why can't the district court entertain that argument on your theory? Well, because I think that argument, disclosure in that circumstance, would be tantamount to allowing a circumvention of the exceptions in Rule 6e3. Because it's outside the scope of the exceptions. Because it's outside the scope of the exceptions, and it's clearly within the scope of the types of disclosures that the rule is intended to, that it's concerned with. It's only a little bit outside the scope of the exceptions. The exceptions are designed to codify preexisting practice. So on your answer to the circumvention point, the more novel and out of left field the theory is, the more likely it is to produce a disclosure because you say, well, it's not close to the exceptions under the rule. It's just a completely different subject. I think in circumstances where the nature of the disclosure is something that the rule shows no sign of having considered, then I think that's a situation in which it can be appropriate, if the rules have not sort of addressed that topic, to leave that to the sound discretion of the district court. And this is part of why I think this reading and this understanding of the rule sort of makes sense structurally. And it gets back to your point, Judge Cass, about isn't this a very detailed list, and so don't we? So it is detailed, but it's also detailed at the front end where it describes who is bound by its obligation of secrecy. It lays out the parties very clearly. And it covers everyone who would be in the room except the witness who's accepted, I assume, for First Amendment purposes. So it does cover everyone who's in the room. And your answer to that is, well, the district court isn't on the list. The district court is not on the list, and I think it makes sense that the district court is not on the list. Again, because I think the way the structure of the rule is set up is that if that's enough to make the list of exceptions non-exclusive, we're just back to where we were, where either you have a road map for complete circumvention or you have this seemingly anomalous result that the more novel the theory, the more likely you are to get the disclosure. I think what it means is that if you're seeking a type of disclosure that the Rules of Procedure is not sort of within the nature of the concern of the rule, then it is left to the district court. And the district court makes the decision whether to allow that disclosure, starting from a strong presumption of nondisclosure. We don't dispute that. That's absolutely right. And so it would only then be in a rare case where disclosure would even be possible. I think I should point out, as I said at the beginning, this is an issue that has been addressed by quite a number of courts and has been addressed for quite a while now, going back to the 70s and 80s. And what's the first case to recognize a historic significance rationale for disclosure? When did that happen? I think the earliest case is 1987. So if we were assessing things by reference to background traditions, which on Chief Judge Wood's theory are carried forward and incorporated into the rule. If we're back in 1945, pre-rule, and a court is looking at the federal common law, that court would find that notwithstanding, whatever, 200 years of grand jury tradition, there's not a single case authorizing disclosure in a case like this. So I think two points to make about that. I think certainly what the pre-rule situation would show is that district courts have discretion to lift grand jury secrecy. Yes, but exercised only in relatively narrow categories of cases. And the two big ones seem to be, one is to aid government criminal investigations, and the other is in aid of pending or impending cases. I agree that I can't point you to a case that allowed disclosure for historical significance in this way. I think two further points to make about that. One, I think that might to some extent be a factor just of the degree to which grand jury proceedings were fully recorded long before the rules. It's not clear that they were. But even putting that aside, I don't think that there needs to have been a clear longstanding practice of disclosures of precisely this sort in order to say that this is a permissible exercise of a court's power. And for that, I would just point to the Supreme Court's decision in Deets v. Bolden about Deets v. Bolden, its 2016 decision about the ability to recall discharged juries. And one of the arguments that was made there was that there's no longstanding history of recalling discharged juries. In fact, the opposite. And the Court said, nonetheless, things have changed, and this — that sort of fact about the history of jury practice did not foreclose recognizing a court's power to recall after discharge. But the theory of Chief Judge Wood, right, which is the best reasoned decision on your side, is that the rule was enacted against a background principle of district court discretion to order disclosures. And the rule was intended to be preservative rather than transformational. And therefore, this background tradition, this background authority survives. And I'm not sure that's right, but even if it is right, it seems like what you're either the text of the rule has in mind or the background tradition has in mind. So I don't think it's that strange from the background tradition. I think it is consistent with a long history of courts disclosing, unsealing court records, admittedly, you know, in a non-grand jury context, but for the purpose of just informing the public about what has transpired in judicial proceedings and furthering greater public knowledge and not connected to the adjudication of particular cases. So I think that — You're leading pre-rule cases, so coming back, right, which is codified in the kind of independent cases theory. That's right. That is an instance of that, but I don't — That's a grand jury case. Yes. You're abstracting away from grand jury cases, and you're saying justification — Correct. — historical significance justification makes sense in a non-grand — or at least exists in a non-grand jury context. Right. In a grand jury context, Saccone is the principle of pre-rule example, and that's obviously not a historical significance case. That's correct. So what I'd say is we have a clear pre-rule history of district court discretion over grand jury secrecy. And we also have a longstanding tradition of court — inherent authority over court's own records and history, considerably in the non-grand jury context, that disclosure of such records for the purpose of historical interest and sort of greater public information — This is your judicial records theory? That's right. And so I think — Judicial records is just legal shorthand for the category of documents that would be subject to a presumptive common law right of access, right? I don't know why that would — All the cases — all the judicial records cases in the briefs are ones where the legal consequence of calling it a judicial record is to trigger a right of access. I don't — It just doesn't remotely describe the historic or continuing treatment of grand jury records to say there's a presumptive right of access but can be overcome if the government makes a case-specific showing of need for secrecy. The rules are exactly the opposite. Well, one thing I don't think fits that bill that we discuss in our brief is, for example, pre-sentence reports. Those are another category of records that are presumptively confidential and not just available and there is a sort of a high compelling need standard to get access for third parties to get access to pre-sentence reports. But as we say, there are cases that show that public disclosure, again, for a purpose is similar to what we're addressing here. So those don't come within the compass of Rule 6. That's right. And so I guess the question for us is how to deal with Rule 6. And just to make sure I'm interpreting your argument correctly, your argument in result is the same place that — is it Carlson's name in the Seventh Circuit case? Yes. That Carlson gets to, but in rationale is not. Right. Because the rationale of the Seventh Circuit in Carlson was not that the rule doesn't cover documents that the court itself possesses. It's that the exceptions set forth in the rule are non-exclusive. And so there can be other exceptions. And one exception could be for historical significance. It's a different — she doesn't have the textual analysis that you have. Not in detail, but I'm not sure that it actually is practically a sort of different framework or would lead to any different results. I think fundamentally the distinction that that decision draws is the one that we draw, which is that the degree of — that the named types of persons in 6E2 are under a type of sort of more absolute constraint in a way that the court itself is not. Well, here's the way I think there could be a distinction, is that the way that Carlson looks at it is that, yeah, the rule actually does, insofar as the rule governs, covers disclosures even when the court itself has the documents. It's just that the rule doesn't set forth all the exceptions. The court can come up with its own exceptions. That's, as I understand it, the rationale of Carlson. And one of the exceptions — because the court has an inherent authority to do so, and a good reason could be circumstances of historical significance. But we have cases like, for example, Sealed case, where there's language that indicates that insofar as disclosures can be allowed in the grand jury context, those disclosures should fit within one of the Rule 6 exceptions. And if that's true, then once you get the rule governing disclosures where the court itself has the documents, it becomes more difficult for you than it would be in a Carlson universe, where under Carlson it doesn't matter if disclosures when the court itself has the documents are governed by the rule, because Carlson says the rule isn't the sum and substance of all exceptions. The court can find its own exceptions. If you've got a body of law, at least a body of statements, which we appear to have, suggesting that disclosures of grand jury documents have to come within one of the Rule 6 exceptions, then it's a problem. No? I guess I agree that you would have divergent results if you got to the conclusion that sort of tacitly the court itself is bound by Rule 6, Rule 62. Then maybe you could. I just don't think there's any way as a matter of text to get to the place that the court itself is covered. I mean, it clearly is not expressly, and clearly could be expressly. As we say, there are many rules, including Rule 6. And Carlson assumes that the court itself is covered, doesn't it? I'm not sure it does. I can see that it's not perfectly clear on this point. Because what was doing the driving work in Carlson was that the exceptions list is not exclusive. The court definitely reaches that conclusion. The court says, I think, correct me if I'm wrong, I think the court says the E3E exceptions, they exist. But it says may. And so that just tells you circumstances in which a court can disclose. It doesn't tell you all the circumstances in which the court can disclose. You can find other exceptions, too. And one of them could be for purposes of historical significance. Now, you still win under that rationale. It's just it seems to me it's a different rationale than the one that you're putting forward. It may be sort of in the precise parsing of the text be a different rationale. But I don't think it, again, I don't think it leads to different results in practice. It doesn't lead to different results because you still get home under that rationale. But to say that it's precise parsing of the text seems to minimize it a little bit because we have to parse the text because it's the text of the rule that we're contending with. And so if the Seventh Circuit's rationale is Rule 6 does govern court disclosures when the court itself has the documents, but the court can come up with its own exceptions, you still win, definitely you still win. But if we have cases that say, wait a minute, for grand jury documents, Rule 6 tells you what the exceptions are. There's no exceptions outside of Rule 6. You've got to find your way home within Rule 6. Then there's more of an obstacle for you. I think I agree with the premises and, again, think that we get by under the text sort of read more narrowly, constrictively in the way that you're suggesting that this Court's precedent reads it. So I don't think there may be some slight difference there in explanation, but I don't think it makes a difference in outcome here. And I don't see that it makes a difference in outcome in almost any situation I can imagine. And, again, maybe I'll just sort of close on the narrowness of what we're asking for here. Well, so let's talk about narrowness. Suppose you're right on discretion. If you are asking for a rule that grand jury records can be disclosed 60 years after the fact, when all the interests and secrecy dissipated, right? That's narrow, and I get that. The problem is it's hard to justify in the rules. So the way you come at it is you say, well, we're outside the rule, and therefore we apply this amorphous nine-factor balancing test, and we win under the test. I mean, I think I agree with you. You win under the test, but my main concern is the unbounded nature of just throwing everything open to a jury test like that. Right. So here I think this is not you sort of don't have to go into this blind, where you don't have to worry that I'm asking you to open Pandora's box, because many other courts have opened this box and there were no calamities inside. Again, this has been the rule in a number of other circuits for many years, and the number of cases that even ask for such disclosures are rare, as the government acknowledges in its 2011 letter to the Rules Committee, where it's granted is rare. And the government has never suggested that in any case from any of these other circuits where these requests have been made and granted that there has ever been an abuse of discretion or that there has ever been any sort of practical problem resulting from any of these disclosures. And further, that disclosures for historical interests like this have not sort of led to other types of inroads into grand jury secrecy. So I really think there's a clear historical track record that shows there's not a slippery slope here and that you don't have to worry about subverting grand jury secrecy generally. And then just another point on that, we obviously believe that our reading of the text is correct and that this is permissible under the rule as it exists. But as the sort of episode in 2011-2012 shows, this is a subject that can be addressed through rulemaking. So if what we believe is the correct reading of the rule turns out to have problematic results of some sort, that's not frozen in amber. We're not asking you to make a constitutional rule, and the Rules Committee could address this. And again, I do think it's important to stress again that the Rules Committee has addressed this, looked at this exact issue, and determined that no revision to the rule was necessary because courts were already reasonably exercising their inherent authority. I'm way over my time, so I will sit down for now. Thank you. Thank you. Good morning, Your Honors. I'm the Justice of the Court, Brett Henshaw, on behalf of the Attorney General. I'd like to begin by going directly to where the Court was addressing these questions about the exceptions themselves that are enumerated in the rule. Can I just start on addressability and hopefully clear that up? Sure. Do you know when the records were transferred from DOJ to the Archives? I don't know at what time those records were transferred. Do you have a position on whether the Archivist or DOJ currently controls the records? I mean, it's fair to say that the Archives holds the records on behalf of the Department. I mean, the Department still has access to those records. Does the Department retain legal control so that an order against the Attorney General would, by operation of that law, get these records put out? Certainly, if there was an order directed to the Attorney General to obtain and disclose these records, there would be no obstacle to the Attorney General doing that. We would be able to disclose these records if we were so ordered. If we thought it necessary, would the Archivist have any opposition to being added as a party so we could just reach the merits and not worry about this complication? I would have to speak with the Archivist, but I assume the answer would be no. I mean, they're certainly aware of these cases and have been involved in them.  Your Honor, the Rule 6e3e exceptions lay out the only circumstances in which a district court may authorize disclosure of grand jury materials, and that's clear both from the text of the rule, the structure of the rule, and this Court's decisions and the Supreme Court's decisions addressing those exceptions. So it didn't seem like the government thought that at the time of Haldeman? Your Honor, that's certainly the case that the government argued both, that the proceeding at issue there fell within one of the Rule 6e exceptions and that and took a different had an alternative argument as well. But that case precedes. And you flipped the order, because the argument that you put second actually was the primary argument that the government made, right? That's true, Your Honor. But that case also precedes Congress's direct enactment of the unless these rules provide otherwise language in 62 and 1977. It precedes Bank of Nova Scotia. It precedes Carlisle. And it precedes this Court's decisions in both of the NRA-sealed cases in 1986 and in 2001. And at least since the time of NRA Craig? You're not taking the position, then, if we thought Haldeman stood for, it was an on-bank decision, if we thought Haldeman stood for the proposition that Rule 6's exceptions aren't, don't occupy the field in terms of circumstances in which grand jury documents can be disclosed, you're not taking the position that subsequent government binding on us, are you? No. In 1977, it was clear that district courts did not have inherent authority to disclose grand jury records in circumstances not covered by the rule. But if there's any doubt on that question, it has been removed since the time of that decision. In any event, Haldeman is a mandamus petition that was briefed, argued, and decided in three days and contains no reasoning that would govern the outcome of this case or any other. I don't know that you can say it contains no reasoning, because it says, first of all, it allows the disclosure of the documents to the House Judiciary Committee. That's correct, Your Honor. And in explaining why the argument that Rule 6 would foreclose it doesn't bar the resolution that the on-bank court reached, it says it's substantially, for the reasons of something like that, set forth by the district court. It says, yes, that it would satisfy the district court's treatment of those questions. And the district court's treatment of those questions is itself alternative. It offers both the argument that the materials requested fall within an exception to the rule and a broader argument about inherent authority. So, again, there's nothing to be drawn from Haldeman itself. And, again, even if you thought there was something in there that was – that maybe this Court thought at that time there might be something to that argument, there shouldn't be any doubt at this point, particularly after the Supreme Court's decisions and this Court's subsequent decisions in the Inriazil case in 1986 and in 2001, both of which made clear, as you were pointing out earlier, that this Court has viewed Rule 6e's exceptions as exclusive, which fits entirely with the text of the rule, because the exceptions themselves are directed at the court. The word may exist to emphasize the discretion district court has when it considers a request that falls within the text of the rule. So under your view of the rule, I take it it's the case that no matter how long ago the documents – the grand jury proceedings are completed, and even if you have an affidavit submitted by the subject of the grand jury inquiry that says, I actually suppose that they're alive but barely at the very late stages, not to be too graphic about it, and they submit an affidavit and it says, you know, my interests are the interests that would be the important stakeholder interests here. I'm fine with the documents being disclosed. So there's no cognizable reason not to disclose the documents. Your argument would be that the rule precludes a district court from releasing documents that nobody thinks should be revealed. Yes, Your Honor. And I would also point out that it's not clear that the judgment that there's no cognizable interest is one that it's the district court's place to make or that's one that's so easy to draw. It's entirely possible to imagine a robust policy debate about at what point grand jury proceedings are disclosed.   or that's where the district court's place is to make a decision about purposes, whose interest are being protected. Right. And the department itself raised those concerns with the advisory committee and when it submitted the proposed amendment to the rule in 2011. And I take it that you don't disagree that when the advisory committee said we don't we're not going to accept your suggestion. The rationality of the advisory committee was we don't need to because courts have inherent authority and courts' inherent authority has been exercised responsibly and we're okay with the status quo. Your Honor, the minutes of that discussion indicate that at least some people may have taken that view. There were also concerns expressed about the substance of the department's proposal. And there was also a view that perhaps this wasn't a significant issue because it was arising infrequently. But I would point out, Your Honor, just in the last – in the time this case has been pending, three additional petitions have been brought in the district court seeking disclosure under inherent power authority, or theory. And I'm aware of at least one other petition that is pending asserting the same thing that was filed before this appeal. So we're starting to see these petitions with increasing frequency. And the reality is that the rule itself governs here. What the advisory committee thought or didn't think isn't relevant to what the rule itself says. But just to note, just to understand what you think the advisory committee thought, your brief says that the advisory committee apparently believing that district courts had appropriately exercised their inherent authority in addressing petitions for historically interesting grand jury materials. Right. So apparently believing that the decisions that had come out had come out correctly in terms of both the decision to disclose, which is a separate question, and whether or not there was an inherent authority in the first place, certainly some members of the committee apparently believed that. But, Your Honor, the advisory committee that considered that proposal was only the first step in a long process for a rule to be enacted, which at its conclusion includes the Supreme Court and Congress. And all of the indications we have from those bodies are that they view these exceptions as exclusive. And so I would point out as well that both the majority and the dissenting Carlson declined to place any weight on the advisory committee's minutes. And I think this Court should follow the same practice. I mean, it's essentially, you know, failed legislative history. And it's not something that's deserving of weight in interpreting the text of the rule itself. Counsel, of these three or four petitions that have been filed during the pendency of this matter, how many invoke an historical justification? I believe all of them. Certainly at least three of them. Do they all postdate Carlson? Three of them do. I'm not sure. I believe the fourth one may have been filed before Carlson, but in close proximity. What's wrong? Assuming there's discretion, what's so horrible about trusting courts for this kind of case to exercise it responsibly and you could build into the test a strong presumption against disclosure? Your Honor. I'm just saying, look, at some point it just becomes silly to worry about records that implicate things regarding people who were long dead. Your Honor, the Department doesn't disagree that at some point there should be a time when grand jury secrecy expires and these records can become public, but that doesn't change the fact that a district court hasn't been given the authority to make those decisions and those judgments in the first instance. Because, again All your eggs in the basket of Rule 6 ties our hands. Well, that, Your Honor, but also the point is that the decision about under what circumstances and when and the conditions that should be placed on that disclosure are judgments for Congress or the Supreme Court to make, not district courts on an ad hoc basis. I mean, you can imagine discussions about the value of these materials, which materials are sufficiently historic or not, and also whether, you know, for example, in a historically significant case it might have an effect on the candidness of grand jury witnesses if they knew that their testimony might subsequently be disclosed. It's not to say... How did the Department's proposal in 2011, what was, how did it have the district courts exercise the discretion? The Department's proposal in 2011 would have had the archivist take the first cut at determining which records were sufficiently historically important to warrant retention by the government in the first place, and then after 30 years would have given limited discretion to district courts to consider petitions for disclosure, and then the materials would have presumptively become public after 75 years. Now, whether the same proposal would be put forward today or considered today, I can't say, but that's the kind of rule you might imagine the advisory committee considering or enacting if, you know, it were to take up this issue in, you know, and address the question directly. But that still would have given a lot of discretion to district courts. Yeah, but discretion... Even under the Department's proposal. Right, but discretion that reflected the considered policy judgment of the Rules Committees, the Supreme Court, and Congress, and that is exactly what we're saying needs to happen here in order for these records to be disclosed. What are the Supreme Court cases that you're relying on that you say don't allow for exceptions outside the context of the rules? Well, Your Honor, just that the Supreme Court has clearly understood these exceptions to be exclusive. When this begins, you look at Pittsburgh Plate Glass, which says any disclosure of grand jury records must occur with, you know, is governed by Rule 6e. Abbott & Associates repeats similar language. Bagot talks about how the exceptions reflect Congress's judgment that not every beneficial purpose or even every valid governmental purpose justifies disclosure. It's just that it seems like in all those cases, they came up in a context in which it's clear that the rule had language that pertained to the matter at hand. And so the question never even came up. What about the disclosure that isn't coming up within the confines of the rule? It's coming up somewhere else. Right, Your Honor, because I think it's important to recognize that this flows from the tradition of grand jury secrecy. The Supreme Court's cases have always emphasized that they want a clear statement from Congress and that you should interpret these exceptions more or less narrowly to ensure that grand jury secrecy is preserved. Again, Abbott & Associates makes this point. Sells Engineering makes this point, that there is an expectation that these materials will remain secret and that it should only be lifted, that secrecy should only be lifted in limited ways when a party demonstrates a particularized need. And that those cases, you're right, have always been litigated within the confines of the rule precisely because of that background principle. And there's nothing in the text of Rule 6e that suggests that that background principle was intended to be changed when it was enacted in 1946. In fact, the committee emphasized it was codifying the traditional rule of grand jury secrecy, including some exceptions. And then subsequent amendments have made that clear. The level of detail and sophistication of the exceptions emphasizes the point. Sotomayor, on your view, what are we to make of the point that the secrecy obligation is imposed on very specific individuals, but the district court is not one of them? Your Honor, the point is that the district court is not privy to grand jury matters when it unless and until a petition is filed or some ancillary proceeding occurs. And so the reason the rule doesn't list the district court in Rule 6e-2 is precisely because it is not doesn't have access to these materials, isn't aware of these secrets until some ancillary proceeding occurs. And when that occurs, separate provisions of the rule govern the district court's disposition of those materials. So, Your Honor, that's Rule 6e-5 and 6e-6 specifically cover those situations. So there's nothing to be drawn from that fact other than that the district court's role here is to be purely reactive. It's not an independent player in the system. The grand jury's independence ensures that that's the case. And for similar reasons, Your Honor, part of the reason it doesn't make sense to think about these in terms of judicial records or executive branch records or some other is that the rule is designed to comprehensively govern grand jury secrecy no matter who has the relevant information because many different players can have it. The grand jurors themselves who are private citizens obviously know about matters occurring before the grand jury, the prosecutor, other individuals whom the prosecutor is able to share that information with, and then in the context of one of these proceedings, the district court itself. So the reason why it doesn't make sense to talk about these in terms of the judicial branch records is precisely because the rule is designed to cover the information regardless of where it's held. So you mentioned sales engineering. Can I just ask you a question about that? Sure. So one part of sales engineering, the court analyzes the way the advisory committee dealt with a rule, and it quotes the advisory committee notes and it characterizes the advisory committee notes as potent evidence, and then it says the advisory committee's explanation strongly suggests a particular interpretation. So if that's all true, is that type of analysis something that we can feel appropriate in bringing to bear on the advisory committee's actions with respect to the 2011 proposal? No, Your Honor, because that addresses the advisory committee's notes, if I'm recalling correctly, on an actually enacted rule. And in those circumstances, the Supreme Court has recognized, yes, those notes deserve considerable weight, but where you have literally minutes of a discussion that occurred in the course of declining to pass forward a proposal, there's nothing additional to be drawn from sales engineering on that point. If anything, the advisory committee notes that we do have addressing grand jury secrecy emphasize the norm of nondisclosure. Rule 61, for example, when it was enacted in 1979, the advisory committee specifically said that the rule did not change the circumstances in which disclosure of grand jury secrecy. Rule 66, we have the language about how we're codifying the traditional rule of grand jury secrecy, which encompasses only limited exceptions that the courts previously were able to lift that secrecy. So there's nothing, the only implications we get from the advisory committee notes on the actually enacted rule favor our position. Can I take you off that track to a different track from the ones I've discussed? Yes, Your Honor. I'm interested in what we're supposed to do with Holloman. In particular, if we look through the on-bank court's opinion on Holloman 2, Judge Sirica's analysis in the district court, I understood you to be saying there's alternate rationales there. One of them is district court inherent authority, and another one of them is that the rule itself covers the disclosure. I take it that would mean that the disclosure to the House Judiciary Committee is a disclosure  That's correct, Your Honor. under which we get it. And where in Judge Sirica's analysis does he adopt that rationale? Your Honor, there's some language in there where he's discussing Rule 6e, and he says that it would be truly incredible if you could disclose this material for purposes of a police disciplinary proceeding, and he cites a few other bar disciplinary actions and similar proceedings, but not for the purpose for which it's sought here. And so it's, I think, Judge Sirica's opinion, I acknowledge, is difficult to parse, but it's certainly not the case that there's a clear rationale that would demonstrate what Holloman said. In answer to Judge McGowan's question, the government said quite clearly that its position did not, in favor of disclosure, did not depend upon the nature of the proceedings in the Congress. Your Honor, I believe in response to a question in an oral argument, the government did say, and Judge McKinnon, in his separate opinion in the Holloman, emphasized that he took into account the fact that the government had represented that this proceeding fell within the rule. So, again So that was the dissent, and what we care about is what the majority thought, and what the majority thought was what Judge Sirica thought, and then that brings us back to what Judge Sirica thought. And on that, the part of the opinion that you're talking about, I know we're down in the weeds here, but we have to look into the weeds in order for us to understand what work the on-bank court disposition in Holloman is doing. On that, the way Judge Sirica described it, he does say that in these situations that, you know, bar disciplinary things, and the broadest one at that point was this case Piaggi, that was a judge-friendly opinion, and the way Judge Sirica describes it is that it's a case that involved circumstances that are, quote, wholly apart from judicial proceedings, close quote, which makes it sound like the rationale was that even though the disclosure has nothing to do with judicial proceedings, it's still a disclosure that a court can authorize. Well, Your Honor, I mean, Judge Sirica, as I recall, is discussing cases in which a disclosure has been ordered in connection with whatever other court was ordering the disclosure found to be a judicial proceeding. Whether or not Judge Sirica would have reached the same result in the first instance is a somewhat separate question from whether or not. Is that what Judge Friendly found in Piaggi? In Piaggi, it's a somewhat unusual case because there you have, again, you have both the government and a witness before the grand jury essentially waiving the protections of Rule 6e. And this Court has, in somewhat analogous circumstances in Raynorth or the Judith Miller cases, recognized that where there are, where other information has already become public, such that the grand jury information may become public such that it loses its protected character under Rule 6e. And so. But I'm not understanding that because I thought that's kind of the hypothetical I started off the entire argument with, which is if everybody buys into the notion that there's no reason to have secrecy anymore, does the rule prevent disclosure? And I thought your position was, no, it still prevents disclosure because there's a set of exceptions that the disclosure has to follow. Your Honor, certainly I'm not saying that Piaggi was correctly decided. I'm just saying that there's a rationale in Piaggi that is different, again, from what you see here, which is the assertion that no matter what purpose the individual is seeking these records for, the district court is permitted to entertain that petition and potentially exercise its discretion to disclose those records. So, again, even if you think there are sort of these extremely narrow situations in which some inherent authority might exist, which, again, we don't believe there are, but even if you thought that, what's being sought here is something fundamentally different. But did Judge Sarekha think that in his opinion? Because once he thinks that there's, even if it's a narrow sliver, if there's a narrow sliver of what he's doing to work, then district courts have authority to go outside the rule. And then you may have some very good arguments about how that non-rule authority for disclosure has to be very narrowly cabined given the presumption of grand jury secrecy and all sorts of considerations that would require, of course, to be very, very careful in exercising that discretion. But once we're outside the rule, then it seems like your argument is in a different place. Your Honor, again, yes, we have sort of both arguments that we've advanced here. Because we do think the rule fully controls, but we also believe that if you don't think that, then a disclosure of this nature is not within a court's inherent power to begin with. So assuming if we're outside the rule, what is the non-rule six principle of law that would govern this case under which the result would be nondisclosure? Well, Your Honor, in terms of what would govern this case, the question would be whether inherent power extends to making these kinds of judgments. And there's nothing in the historical practice, there's nothing in the nature of inherent power itself which exists to protect judicial proceedings, the proceeding before the this kind of disclosure. So the historic practice and the disconnect to the conceptual justification of inherent authority, which is to facilitate adjudication cases? That's right, Your Honor. And Williams states this very nicely, because Williams points out that it's there, that the inherent power exists to improve the truth-finding process of the trial or to prevent outside of the context of the courtroom or the trial itself. And so those kinds of authorities are exactly what we see generally invoked as inherent power. A policy judgment about what kinds of social purposes justify disclosure, the beneficial purposes that Bagot talks about, are simply outside of that kind of power. And what interest would be served by not allowing disclosure here? Your Honor, the interest that we have is in ensuring that the proper bodies are able to make these decisions. This is simply not a judgment that courts are empowered to make. This is a judgment about the law. Right. So I understand that. And I don't mean to minimize it at all, but I do understand that argument that we ought to cabin institutions within their properly defined roles. And that just gets back to whether the rule governs. Because obviously they don't take the position that there's some kind of extant problem with allowing district courts to monitor disclosures in this area, because that's exactly what the Department proposed in 2011. So I understand the interest in making sure that the rules, that bodies operate within the constraints of rules that are duly promulgated. That makes sense to me. I'm just wondering, if we just put that one to one side for a second, what's the interest that would be served by not allowing disclosure here just vis-a-vis what we typically talk about with grand jury secrecy? Why? Well, Your Honor, as I pointed out earlier, it's entirely possible that you could have individuals who, you know, if they know that their grand jury testimony may be disclosed at some later time, may or may not be as candid as they would have been in this case. No, but in this case. Well, Your Honor, in this case, the fact that there might be a disclosure here is going to inform potentially future grand jurors. Okay. I mean, it's okay if it's not. You can still win even if you think there's not a great interest that would stand in the way of disclosure. That's correct. But I'm just wondering if you do think there's an interest that stands in the way of disclosure. Your Honor, the fact that we're having this discussion and trying to weigh that interest illustrates why that's not a decision that district courts should be making on an ad hoc basis in the first place. The fact that we're having this discussion emphasizes that it's a policy judgment that ought to be made either through the rulemaking process with the Supreme Court or by Congress itself, just as it has made that judgment multiple times in the past. Okay. Thank you, Your Honor. Thank you. I'll try to keep this much briefer. Just a few points, starting with the sort of text and structure of the rule and the cases that have interpreted it. So on Haldeman, I think the passage that you were discussing, Judge Schoonvason, about, you know, if it can be disclosed for these other reasons, wouldn't it sort of be crazy to think it can't be disclosed for this purpose? I think that is an indication of Judge Sciarica noting that it is not authorized, that the disclosure he was doing was not authorized by the rule. And it was a sort of, you know, a sort of absurdity argument that, you know, even though this is outside the rule, it just can't be that I'm not allowed to do this. There are a lot of post-Haldeman cases, though, that seem to point in the opposite direction. Henry Seale is post-Haldeman. Bag of Douglas oil sells. That's true, but... So we sort of have, you know, one muddy precedent pointing one way and others arguably pointing another. I think the takeaway that this issue really is open to us and not controlled by... I think the resolution... Or imposed by precedent. I think the resolution lies in the textual argument that we've put forward here, that there is a distinction between disclosures that are being made by the people specifically enumerated in 6E2. And again, to sort of tie that back into Haldeman, again, this textual argument is the argument that the government made in Haldeman. And just in passing, I should note, it's also the argument that Judge Howell recently put forth in a recent decision of hers. So I don't think this is sort of a kooky, out-of-left-field argument. I think it is the plain text, and it does help make some sense of how all these decisions fit together. Just quickly on Biagi, Judge Friendly is very clear that he is not within the text of I don't think it can be explained away as a waiver case because that is not within 6E. And the whole sort of point for disclosure there was that Judge Friendly felt that the witness had not accurately disclosed what occurred before the grand jury. It was to reveal something that had not been revealed that was the justification for his decision in that case. The tag phrase, as I recall, was exceptional circumstances, right? Yes. Which seems pretty narrow and very different from we have the rule or in the alternative we have a nine-factor balance test. Well, I think it speaks to how heavily those factors have to weigh for you to get disclosure when you're in a circumstance not governed by the rule. I mean, you're fine with exceptional circumstances, I think, right? Yes. That's right. And it is the exceptional circumstances sort of that undergirds the decisions of the courts that have allowed for disclosure in historical. What's the exceptional circumstance here, passage of time? It's a combination of the policy argument. It just doesn't seem very exceptional. Well, I think part of the exceptional just has to be that the nature of the underlying case whose records you're trying to get has to be exceptional. If you were trying to get access to the grand jury records of a mugging that occurred in D.C. in 1956, I don't think you'd get that. I think the threshold is do you have a case. You don't think President Eisenhower would have been alerted to that mugging? Probably not. I don't think J. Edgar Hoover would be keeping an eye on it. And I don't think it would be the continued subject of historical and fictional interest today. So I think — and on this point, I think the district court was clearly with us that this is the type of case that is appropriate for disclosure. And we think that's exactly right. And I don't — I think the government has basically conceded that there is no sort of case-specific reason not to disclose these records, and we think that's right. So we would request that this court affirm that the district court has this type of authority and remand this case for — to allow these records to be released.  Thank you. Thank you, counsel. Thank you, counsel. The case is submitted. Mr. Phillips, you are appointed by the court to present arguments in support of Mr. McKeever's position, and the court thanks you for your able assistance. Stand, please.
judges: Srinivasan, Katsas, Ginsburg